HURON VALLEY HOSPITAL, INC v STATE HEALTH FACILITIES
COMMISSION

Docket No. 57144. Submitted June 17, 1981, at Detroit.—Decided
October 7, 1981. Leave to appeal applied for.

Huron Valley Hospital, Inc., applied to the Department of Public
Health for a certificate of need to construct a hospital. It also
filed its application, as required by the former public health
code, with the local health facilities planning agency, which
recommended denial of the application. The director of the
department denied the application, and the petitioner appealed
to the Michigan State Health Facilities Commission. The case
was heard *de novo,* and the commission's examiner recom-
mended denial. Both parties filed exceptions, and, following a
further hearing, the commission denied the appeal. The peti-
tioner appealed in Oakland Circuit Court, which reversed the
decision of the commission and ordered the department to issue
the requested certificate, Francis X. O'Brien, J. During the
pendency of the petitioner's application and the appeal of its
denial, the department issued a provisional license to Pontiac
General Hospital to expand its facilities within the same health
facilities service area. The petitioner sought to enjoin the
department from issuing a certificate of need to Pontiac Gen-
eral in Oakland Circuit Court. The injunction was issued and
subsequently dissolved. The petitioner appealed in the Court of
Appeals, which affirmed the decision of the circuit court, *Huron
Valley Hospital, Inc v Dep't of Public Health,* 92 Mich App 175
(1979), whereupon the department granted a certificate of need
to Pontiac General. The commission appeals. *Held:*

1. The circuit court properly found that the utilization of

REFERENCES FOR POINTS IN HEADNOTES

[1-5] 40 Am Jur 2d, Hospitals and Asylums § 4.
Validity and construction of statute requiring establishment of
"need" as precondition to operation of hospital or other facilities
for the care of sick people. 61 ALR3d 278.

[3-5] 2 Am Jur 2d, Administrative Law § 278 *et seq.*
Construction and application of federal Administrative Procedure
Act. 97 L Ed 884.

[5] 2 Am Jur 2d, Administrative Law §§ 281-283.

[6] 2 Am Jur 2d, Administrative Law § 678.

unpromulgated criteria by the department which gave specific preference to an existing health care facility at the expense of the petitioner's projected new construction and the affirmance of the use of the criteria by the commission constituted an abuse of discretion, rendering the denial of the petitioner's application invalid.

2. The circuit court properly found that the petitioner was denied an impartial review of its application. The commission failed to make findings of fact regarding most of the statutory criteria involved in reviewing the petitioner's application, and its consideration of the comparative merits of the petitioner's and Pontiac General's applications appear to be *post hoc* rationalizations for the department's actions.

3. The circuit court properly ordered the department to issue the petitioner a certificate of need. The record reveals that further proceedings would not remedy the effect of the errors which had occurred. In addition, the relief granted was authorized specifically under the former code and is authorized by the Administrative Procedures Act.

Affirmed.

1. HOSPITALS — CONSTRUCTION OF HOSPITALS — CERTIFICATES OF NEED — STATUTES.

The former public health code required that prior to the construction of a hospital a certificate of need documenting a demonstrated need for the facility and granting permission for its construction be obtained by an applicant (MCL 331.454; MSA 14.1179[54], since repealed, 1978 PA 368).

2. HOSPITALS — OPERATION OF HOSPITALS — PROVISIONAL LICENSES — STATUTES.

A provisional license to establish or maintain a hospital could be issued pursuant to the provisions of the former public health code where an applicant for a license, whose services were needed in a community, was temporarily unable to comply with all the rules and regulations relating to the physical plant (MCL 331.416; MSA 14.1179[6], since repealed, 1978 PA 368).

3. ADMINISTRATIVE LAW — HOSPITALS — STATUTES.

The Department of Public Health, pursuant to the Administrative Procedures Act, must promulgate, process, and publish the rules and regulations to be used in granting certificates of need for the construction or maintenance of health facilities (MCL 24.201 *et seq.;* MSA 3.560[101] *et seq.).*

4. HOSPITALS — ADMINISTRATIVE LAW — CERTIFICATES OF NEED — STATUTES.

Use of unpromulgated criteria by the Department of Public Health in the evaluation of an application for a certificate of need for the construction or maintenance of a hospital, pursuant to the requirements of the former public health code, which gave preference to extant facilities over new construction violated procedural limitations in the application of the department's discretion, and denial of a certificate of need on the basis of the criteria was thus invalid, there being no statutory justification for the preference (MCL 331.454; MSA 14.1179[54], since repealed, 1978 PA 368, MCL 24.201 *et seq.;* MSA 3.560[101] *et seq.,* MCL 24.306[1][b], [e]; MSA 3.560[206][1][b], [e]).

5. HOSPITALS — CERTIFICATES OF NEED — APPEAL — STATUTES.

Parties who made mutually exclusive applications for certificates of need for the construction or maintenance of a hospital pursuant to the requirements of the former public health code should have been accorded comparative hearings by the Department of Public Health prior to the issuance of a certificate to one of the parties (MCL 331.458; MSA 14.1179[58], since repealed, 1978 PA 368).

6. ADMINISTRATIVE LAW — APPEAL — STATUTES.

A decision or order of an administrative agency may be reversed on appeal where it is unsupported by competent, material, and substantial evidence (MCL 24.306[2]; MSA 3.560[206][2]).

*Schlussel, Lifton, Simon, Rands, Kaufman, Lesinski & Jackson* (by *T. John Lesinski* and *James C. Foresman),* for petitioner.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Walter V. Kron* and *Marvin L. Bromley,* Assistants Attorney General, for respondent.

Amici Curiae:

*Zweig, Harkness & Kaser, P.C.* (by *David L. Kaser* and *Gale Shiener),* for International Union, United Automobile, Aerospace and Agricultural Workers of America, Michigan Association of

Health Systems Agencies, Chrysler Corporation, Ford Motor Company, General Motors Corporation, and Blue Cross & Blue Shield of Michigan.

Before: V. J. BRENNAN, P.J., and N. J. KAUFMAN and E. E. BORRADAILE,* JJ.

V. J. BRENNAN, P.J. Respondent (hereinafter defendant) appeals by right the decision of the circuit court reversing defendant's denial of petitioner's (hereinafter plaintiff) application for a certificate of need to build a hospital and directing the Department of Public Health (hereinafter "department") to issue the requested certificate of need.

Plaintiff, Huron Valley Hospital, Inc., is a Michigan nonprofit corporation organized for the purpose of constructing a hospital in western Oakland County. To do so, it is required by law to have a certificate of need "which documents a demonstrated need and grants permission for the proposed project". 1972 PA 256 (hereinafter "act 256"), § 4. (Act 256, MCL 331.451 *et seq.;* MSA 14.1179(51) *et seq.,* was repealed and replaced by §§ 22101-22181 of the Public Health Code, MCL 333.22101 *et seq.;* MSA 14.15(22101) *et seq.* The lower court held, and all parties agreed, that the provisions of act 256 must be applied in this appeal.)

Plaintiff filed an application for a certificate of need with the Department of Public Health on February 10, 1977. Plaintiff sought to build a 153-bed, acute-care facility in Commerce Township, Oakland County. Of the 153 beds, plaintiff proposed to build 13 obstetrical beds, 12 pediatric beds, 3 intensive-care beds, and 3 cardiac-care beds. Plaintiff proposed to offer medical-surgical,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

obstetric, pediatric, intensive and cardiac care, laboratory, radiology, emergency, and pharmacy services. In its application, plaintiff proposed a cost of $14.789 million; plaintiff's expert at the administrative hearing testified that the cost would be $18.8 million.

Plaintiff was required at the same time, to file its application with the local health facilities planning agency by § 6 of act 256. This agency was the Comprehensive Health Planning Council for Southeastern Michigan (hereinafter "CHPC-SEM"). CHPC-SEM was also required by federal law, PL 93-641; 42 CFR 122.301, to review the application. Recommendations adverse to plaintiff's application were made by the CHPC-SEM's Oakland County Subarea Advisory Council and Plan Implementation Committee. The council's executive committee recommended that the Department of Public Health deny the application.

Having received this recommendation, which in no way was binding upon him, the director of the department denied the application. Pursuant to § 8 of act 256, plaintiff appealed the denial to the defendant, Michigan State Health Facilities Commission (hereinafter "commission"). This appeal was heard *de novo* and was subject to the contested case provisions of the Michigan Administrative Procedures Act of 1969. MCL 24.201 *et seq.;* MSA 3.560[101] *et seq.* Decisions of the commission are binding upon the department. Decisions adverse to an applicant can be appealed to the circuit court.

The commission appointed an independent hearing examiner to take evidence and to make proposed findings of fact and conclusions of law. The hearing examiner, Don P. LeDuc, recommended denying the application. Both parties filed excep-

tions to his findings. After allowing written and oral argument, the commission denied the appeal. Plaintiff appealed the denial to the circuit court, which reversed the decision of the commission and ordered the department to grant the requested certificate of need.

A key element in the circuit court's decision was the treatment of the application for a certificate of need by Pontiac General Hospital. Both Pontiac General and plaintiff's proposed hospital were located within health facilities service area 76, as defined by the Michigan State Plan for Health and Medical Facilities Construction, 1975-1976. Plaintiff filed its notice of intent to apply for a certificate of need for its proposed 153-bed facility on or about April 5, 1976. On July 30, 1976, the department issued Pontiac General Hospital a provisional license pursuant to § 6 of 1968 PA 17, then MCL 331.416; MSA 14.1179(6). A provisional license may be issued under the act "to an applicant whose services are needed in the community but who is temporarily unable to comply with all the rules and regulations relating to the physical plant". Plaintiff's application was completed and ready for review on February 10, 1977. On June 20, 1977, the director of the department denied plaintiff's application; the reasons for the decision were issued July 5, 1977. On June 27, 1977, Pontiac General had filed a notice of intent to request a certificate of need for a new hospital building. Pontiac General proposed to abandon its old inpatient facility and construct an entirely new one, for which a certificate of need was required. On September 6, 1977, plaintiff requested a contested case hearing before the commission, seeking to reverse the denial by the director of the department. On December 8, 1977, the Pontiac General

application was completed and filed. On January 12, 1978, CHPC-SEM recommended approval of the Pontiac General application. On February 1, 1978, plaintiff filed suit against the department seeking to enjoin it from issuing a certificate of need to Pontiac General Hospital. On March 22, 1978, the circuit court enjoined the department from issuing the certificate to Pontiac General. This injunction was dissolved August 25, 1978, and the dissolution was appealed to this Court, which affirmed. *Huron Valley Hospital, Inc v Dep't of Public Health,* 92 Mich App 175; 284 NW2d 758 (1979). On August 25, 1978, the date the preliminary injunction was dissolved, the department approved Pontiac General's application for a certificate of need.

On appeal, defendant contends that the circuit court erred in its dual finding that the ultilization by the department of unpromulgated criteria which gave specific preference to existing facilities was both an abuse of discretion and exceeded the agency's statutory authority.

In the instant case, the commission found and justified the application of the following unpublished criteria which led to the disparate treatment of plaintiff's and Pontiac General Hospital's certificate of need.

The commission found:

"In conjunction with the discharge of their duty to administer Acts 256 and 299, the Director and the Department have been continuously guided by three specific criteria in the evaluation of certificate of need applications: (1) no new beds will be constructed in a service area which is classified as overbedded by the State Plan; (2) the highest priority will be granted to existing facilities seeking a certificate of need to modernize or correct licensing deficiencies; and (3) the stat-

ute would be utilized to remove existing beds from line only in the most extreme circumstances."

The commission acknowledged that the criteria never had been set forth in any written rule, regulation, guideline, or publication nor had the department taken any action to notify prospective applicants of the criteria. Nevertheless, the commission justified the criteria on the basis that it was inherent to the statute.

The circuit court, however, disagreed. Rather, it held that the utilization by the department of criteria which give preference to existing facilities was both an abuse of discretion and exceeded statutory authority. The pertinent section of the statute, MCL 331.454; MSA 14.1179(54), mandates that "[t]he director shall promulgate rules, after prior consultation with local and regional health planning agencies and the concurrence of the state comprehensive health planning advisory council, subject to the approval of the commission, in accordance with and subject to Act No. 306 of the Public Acts of 1969, as amended, [Administrative Procedures Act of 1969] being sections 24.201 to 24.315 of the Compiled Laws of 1948, to provide for the issuance of certificates of need". Under the Administrative Procedures Act of 1969, the department, a state agency, is required to promulgate, process, and publish all its rules and regulations so as to limit its exercise of absolute, uncontrolled discretion in its issuance of certificates of need. MCL 331.454; MSA 14.1179(54); MCL 24.201 *et seq.;* MSA 3.560(101) *et seq. Allos v Liquor Control Comm,* 97 Mich App 44; 294 NW2d 241 (1980), *Mallchok v Liquor Control Comm,* 72 Mich App 341; 249 NW2d 415 (1976).

We therefore find that the department's use of unpromulgated criteria and the commission's affir-

mance of the use of the criteria in evaluating the issuance of certificates of need is in violation of the statutory procedural limitations in applying their discretion, *i.e.,* promulgating policies into agency rules and regulations. Hence, the denial of the certificate of need was invalid.

Similarly, we do not find that this defect of using unpromulgated and unpublished criteria in evaluating plaintiff's certificate was cured by the commission's rationale that a preference for existing facilities is inherent in the statute. Act 256 makes no distinction between applicants; criteria premised upon these preferences are not within the provisions or purpose of the statute. We concur with the circuit court that the commission's attempts to read these preferences into a legislative intent to prefer and perpetuate existing facilities over new applicants was invalid and exceeded statutory authority. The director's, department's, and commission's utilization of factor 2 and factor 3 in evaluating plaintiff's application exceeded statutory authority and were abuses of discretion, and, hence, must be set aside. MCL 24.306(1)(b), (e); MSA 3.560(206)(1)(b), (e).

Defendant next argues that the circuit court erred in its finding that plaintiff was deprived of an impartial review of its application in violation of its right to due process. In essence, the controversy can be reduced to the competition between plaintiff and Pontiac General Hospital for the issuance of the one certificate of need since it was the department's view that both the plaintiff and Pontiac General could not receive certificates of need. Thus, when the department made its selection between the two competing applicants on the basis of above-mentioned criteria which gave unwarranted preference to existing facilities, it un-

fairly preferred Pontiac General Hospital to the detriment of plaintiff. On this basis, Pontiac General Hospital subsequently was permitted to build new additions which perpetuated the existing over-beddedness and maldistribution of beds within service area 76. Plaintiff, however, was denied the certificate on the basis that it was impossible for a facility to prove that it could demonstrate satisfactory compliance with the statute in a service area with an excess of beds.

An examination of the commission's finding of facts demonstrates other preferences which the department displayed in favor of Pontiac General Hospital. (See findings 258, 482-514.) To illustrate: The commission found that the department's failure to examine potential cost savings to be achieved by the construction of the plaintiff's project as opposed to, or in conjunction with, a reduced Pontiac General project was due to the department's predisposition to protect Pontiac General vis-à-vis the plaintiff (finding 258), that basic fairness requires that where applications compete for a scarce or limited grant or license they should be judged on some comparative basis which was not the case here (finding 500), that the department had placed great emphasis on shared services and cost containment, including the concept of avoiding duplication of services, in reviewing plaintiff's application, which dealt with a proposed facility which would be in excess of 20 miles from the nearest existing facility, while such concepts were not raised in the review of the Pontiac General application, which dealt with the construction of a hospital located proximate to two other existing facilities containing services identical to those proposed by Pontiac General (finding 512), that the department's treatment of the application of Pon-

tiac General and plaintiff did differ in some respect (finding 513), that the department never considered what the effect of outright denial of Pontiac General's application would indeed have or whether it would be preferable to deny Pontiac General's application and build a new facility in the western portion of the service area (finding 513).

However, the commission, while recognizing the disparate treatment given the two applications, also found that it did not rise to a denial of due process or equal protection of the law (finding 514).

We disagree. On this record, it is undisputed that plaintiff and Pontiac General were rivals for the issuance of a sole certificate of need. The department was of the opinion that it would not be possible to grant both plaintiff and Pontiac General certificates. Under these circumstances, it is incumbent that parties making mutually exclusive applications be accorded comparative hearings.

Plaintiff relies heavily on the principle of administrative law known as the *Ashbacker* doctrine. *Ashbacker Radio Corp v Federal Communications Comm,* 326 US 327; 66 S Ct 148; 90 L Ed 108 (1945). In *Ashbacker,* the FCC had considered two applications for a radio license. The commission granted a license to one applicant without a hearing and on the same day set the other application for hearing. Each applicant had a right under the statute to a hearing before its application was finally denied. The United States Supreme Court held that if the grant of one application effectively precluded the grant of the other, the statutory right to a hearing which Congress had accorded applicants before denial was "an empty thing". The Court held that "where two *bona fide* applications are mutually exclusive the grant of one

without a hearing to both deprives the loser of the opportunity which Congress chose to give him". *Id.,* 333. *Ashbacker* has been applied to all federal administrative agency adjudication procedures where the criterion of mutual exclusiveness has been found to be satisfied. The doctrine and its development are described at length by Kenneth Davis in his treatise on administrative law. Davis, Administrative Law Text (3d ed), pp 209-210, § 8.10. *Ashbacker* has never been held to be constitutionally required specifically but has been used to give meaning to legislative schemes where the problem of mutual exclusiveness of licenses is presented. The present case is a very good example of how meaningless the right to a hearing can be without provision for concurrent hearings and review. The commission, in general, found that the treatment accorded the competing applications of plaintiff and Pontiac General was unrelated to the goals of the statute. The department had not attempted to promote cost containment by having the applicants compete, but merely presented plaintiff with a *post hoc* rationalization for its denial, which was clearly premised upon its intention to grant Pontiac General a certificate of need, regardless of the relative merits of the two applications. The commission devoted some 13 pages of findings to the department's review of the application in addition to its conclusions concerning the process of review undertaken by the department, which have been detailed above. The commission was clearly disturbed by the department's failure to take seriously its role under the statute. The commission did not seem as concerned about the fairness to plaintiff as it was about the failure of the department to promote the purposes of the statute by the procedure it followed. At the time the commission heard the appeal of the director's

denial of plaintiff's proposal, the only means of promoting the purposes of the statute (cost containment) was to deny plaintiff's application. The department had granted Pontiac General's application without more than a perfunctory attempt to promote the purposes of the statute. Regardless of the relative merits of the two applications, the only means by which the commission could promote the purposes of the statute was to deny plaintiff's application. Under the circumstances, the commission's decision was almost certainly strongly influenced by the grant of the certificate to Pontiac General. If the commission were to promote the purposes of the statute, its decision needed merely to rationalize the decision already made by the department. If plaintiff was to have fair treatment of its application on its merits, the commission would stand the risk of defeating the purposes of the statute.

We have found no authority in Michigan supporting the application of the *Ashbacker* doctrine. At the same time, the failure of the department to consider applications on a comparative basis completely defeats the purpose of the statute's provisions for appeal and judicial review. This is especially true here, where the department relied almost solely on its preference for existing facilities (actually owners-operators), which the department claimed was inherent in the statute. As noted previously, the circuit judge properly rejected this claim. A review of the commission's claims on appeal reveals that no such preference was inherent in the statute. Applications for certificates of need were to be treated under the same criteria regardless of who made the application. The department's interpretation, as revealed in the commission's brief, was based on extremely tenuous

notions about statutes which were not clearly related to the certificate of need statute. The Legislature has passed an entirely new statute, §§ 22101-22165 of 1978 PA 368, the Public Health Code, MCL 333.22101 *et seq.;* MSA 14.15(22101) *et seq.* The new statute was completely revised and clearly contains no preference for existing owners and operators. There is clearly a preference for containing costs by preventing new construction rather than removing beds from the market, but not a preference for new construction by existing owners-operators. To some extent, the new statute addresses some of the problems faced by the department and commission in the present case, *e.g.,* §§ 22121(3)(a), (b), 22131(1)(e), (j), (2), 22132. In § 22132, the Legislature specifically refers to "a project to correct a licensing deficiency", indicating that it is to be judged by the same criteria as other applications.

Although the commission did not explicitly so state, it apparently attempted to provide some measure of fairness to plaintiff by comparing the merits of its application to the application of Pontiac General. In its review of this issue, however, the commission failed to make findings of fact concerning most of the statutory criteria. Its consideration of the comparative merits of the applications, while well-intentioned, appears to be a *post hoc* rationalization for the department's actions, especially the department's policy of favoring the owners and operators of presently licensed facilities.

Lastly, the defendant argues that the circuit court erred by ordering a certificate of need to be issued rather than remanding back to the commission for its determination.

The lower court held:

"The court also finds that further proceedings would not remedy the effect of the errors which have occurred. There remains no discretionary action to be taken by the department. Enactment of the Public Health Code has significantly altered the purpose and scope of the statute. The promulgation of rules necessary to reevaluate petitioner's application under the preexisting statute, is unlikely if not impossible. Nor is remand a procedure by which to subsequently compensate for factual insufficiencies in the record. Most significantly, the prejudicial effect on petitioner and the citizens within the petitioner's primary service area, caused by the department's predisposition to protect Pontiac General Hospital, cannot be remedied."

The lower court was correct in finding that further proceedings would not remedy the effect of the errors which had occurred. The department's failure to develop procedures to comport with the Legislature's intent when applications compete for a single certificate prevented there ever being a consideration of plaintiff's proposal independent of that error.

A remand to the commission for new findings of fact on the merits of its application relative to those of the application of Pontiac General would suffer from the same problem as the original commission decision. If members are committed to cost containment, the department's action leaves then only one way of satisfying this commitment: denial of plaintiff's application. Assuming construction has proceeded on Pontiac General, the commission's decision already has been made by the department, assuming a commitment to the purposes of the statute.

It is clear that the relief granted by the circuit court was not only envisioned by the Legislature but specifically was authorized by it:

"If the certificate of need is not granted by the commission or the person who applies for the certificate of need is aggrieved by the decision of the commission, then he or the local planning counsel may appeal to the circuit court of the county in which the appealing health facilities is located *requesting an order reversing the decision of the commission* in the same manner as is provided for a civil suit." (Emphasis added.) MCL 331.458; MSA 14.1179(58).

Similarly, the Administrative Procedures Act authorizes reversal of an agency's order which is unsupported by competent, material, and substantial evidence.

"The Court, as appropriate, may affirm, *reverse* or modify the decision or order or remand the case for further proceedings." (Emphasis added.) MCL 24.306(2); MSA 3.560(206)(2).

While no Michigan case law has been found addressing either of these statutory provisions in the direct context of the instant question, similar questions have been addressed by courts in other jurisdictions. Particularly, Huron Valley directs this Court to the holding of the Texas Court of Appeals in *Texas Health Facilities Comm v Baptist General Convention of Texas,* 573 SW2d 575, 583 (Tex Civ App, 1978).

"However, for a court judgment to have a practical effect, when there are no further discretionary proceedings necessary the judgment of the court setting aside the Commission's order carries with it the converse, *i.e.,* that the Commission should grant the Certificate of Need."

In *Schultz v Dep't of Health,* 46 App Div 2d 580; 364 NYS2d 566 (1975), the appellate court

directed the agency to issue a certificate of need for a nursing home where the reason for rejection of an application was the finding of underutilization of a hospital owned by the applicant.

Other cases supporting this conclusion in the area of certificate of need are *Northwest Hospital v Illinois Facilities Planning Board,* 59 Ill App 3d 221; 375 NE2d 1327 (1978), and *Bayswater Health Related Facility v New York State Dep't of Health,* 57 App Div 2d 996; 394 NYS2d 314 (1977).

In light of the foregoing, we find no error in the lower court's order directing the department to issue the requested certificate of need.

Affirmed.